FLOYD M. NYMAN, Plaintiff-Appellant, *v.* WASHINGTON STATE BANK, Defendant-Appellee.

Third District   No. 79-833

Opinion filed July 29, 1980.

James Walker and James R. Wylder, both of James Walker, Ltd., of Bloomington, for appellant.

Daniel Furrh, of Goldsworthy, Fifield & Prusak, of Peoria, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Plaintiff Floyd M. Nyman filed suit against defendant Washington State Bank alleging breach of an oral contract to pay certain creditors of one Jack L. Cook. Defendant moved to dismiss the complaint pursuant to section 48 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 48), alleging the existence of affirmative matters defeating the cause of action. This appeal is from the order of the circuit court of Tazewell County granting defendant's motion and dismissing the complaint.

In determining the propriety of a motion to dismiss, all facts properly pleaded in the complaint must be taken as true. (*E.g.*, *Kendall v. Kendall* (1978), 71 Ill. 2d 374, 375 N.E.2d 1280.) The complaint at bar alleges that on September 20, 1975, defendant's employees met with plaintiff to discuss the possibility of his purchase of the business of Jack L. Cook. Cook had borrowed over $20,000 from defendant and was in default on some of his loans. Defendant had additionally returned unpaid a number of checks drawn on his account at the bank. During the discussions of September 20, plaintiff asked Robert Chave, an employee of defendant,

for the identity of Cook's other creditors and additional information relating to the mechanics of completing the sale of Cook's inventory in compliance with the bulk sales act. (Ill. Rev. Stat. 1977, ch. 26, par. 6—101 *et seq.*) Chave replied that plaintiff need not be concerned about these statutory provisions as defendant "was promising that Cook's other creditors would be paid." Plaintiff then signed a note which pledged the inventory as security for its payment and a companion security agreement whereby he covenanted that he would obtain good and marketable title to the collateral, free and clear of all liens.

On September 29, 1975, plaintiff returned to defendant's office for the closing of the transaction but informed Chave the sale and purchase could not be completed as he had only received the list of Cook's creditors a day earlier and therefore could not provide them with the required notice of the transaction. Chave again responded that plaintiff should not be concerned as defendant "would guarantee that all other creditors of Cook would be paid." The transaction was then consummated.

Cook subsequently declared bankruptcy and his trustee proceeded against plaintiff as owner of the inventory. Defendant refused to assist plaintiff in resisting the claim, which plaintiff ultimately settled for $16,000 plus accrued interest. Plaintiff then filed the action at bar and defendant responded with its motion to dismiss, which was supported by various documents from the bankruptcy action. Defendant argued that the sale of the inventory was ineffective against the creditors because of plaintiff's failure to provide them with 10 days' notice of his possession of, or payment for, the goods (Ill. Rev. Stat. 1977, ch. 26, par. 6—105) and that the security agreement provided that he had or would obtain good title to, and would defend, the collateral inventory. The former contention was supported by a copy of the notice to creditors, authenticated by affidavit, bearing the date September 29, 1980. The latter contention premised the argument that the oral negotiations had been merged into the written agreement. The motion additionally contended that if the oral promise of September 29 was viewed as a new and separate agreement, it was void for lack of consideration; and that plaintiff did not rely on Chave's statements as he did notify Cook's creditors. The trial court did not indicate its grounds for granting the motion.

On appeal, plaintiff contends that the trial court erred in granting defendant's motion to dismiss as the motion was procedurally improper and the affirmative matter presented did not defeat his cause of action. Our search of the record reveals no objection to the procedure of filing the motion to dismiss pursuant to the provisions of section 48. As we are precluded from considering an issue which is not reflected in the record on appeal (*e.g.*, *Bettenhausen v. Guenther* (1944), 388 Ill. 487, 58 N.E.2d 550) and apparently raised for the first time on review (*e.g.*, *Kravis v.*

*Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417), we shall proceed directly to the substantive issue.

Taking both the allegations of the complaint (*e.g., Kendall v. Kendall* (1978), 71 Ill. 2d 374, 375 N.E.2d 1280) and the facts alleged by affidavit (*e.g., Loughman Cabinet Co. v. C. Iber & Sons, Inc.* (1977), 46 Ill. App. 3d 873, 361 N.E.2d 379) as true, there is no question that plaintiff failed to provide Cook's creditors with proper notice of his purchases and that this failure thwarted his good title to the inventory. There is likewise no question that plaintiff assumed the burden of acquiring good title to the collateral by executing the security agreement. The matter with which we are faced is the nature and enforceability of defendant's oral promise that Cook's creditors would be paid. As that promise was repeated after the execution of the note and security agreement, we do not reach the issue of merger, and the parties raise no issue regarding fraud, estoppel, or the necessity of a writing. Remaining for our examination is defendant's contention that the oral agreement is unenforceable for want of consideration.

■■■ Consideration is a basic element for the existence of a contract, and any act or promise which is of benefit to one party or disadvantage to the other is a sufficient consideration to support a contract. (*E.g., Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634.) While we agree with defendant that plaintiff's execution of the note and security agreement was not considered for its oral promise, we disagree with its conclusion that this renders the agreement unenforceable. After alleging the elements of Cook's financial difficulties, plaintiff states he purchased the business "in consideration of" defendant's promise that Cook's creditors would be paid and that defendant "applied the proceeds of the sale to the debts Jack Cook owed Defendant." While plaintiff's former legal characterization is of no moment in our examination of this issue (*e.g., Meyer v. Murray* (1979), 70 Ill. App. 3d 106, 387 N.E.2d 878), the pleadings considered as a whole (*e.g., Mid-Town Petroleum, Inc. v. Dine* (1979), 72 Ill. App. 3d 296, 390 N.E.2d 428) allege both a benefit to defendant and a disadvantage to plaintiff. That Cook's financial difficulties directly affected defendant is evidenced by the default on loans and return of checks by the institution. When plaintiff purchased the business, defendant was able to eliminate a potentially serious business problem. Finding a purchaser for the business allowed defendant to replace a troublesome debtor with one who was financially solvent and occasion the repayment of the problem debt. Plaintiff's purchase of the business thus presented a benefit to defendant which constituted consideration for its promise. Plaintiff additionally assumed the disadvantage or detriment of consummating a bulk purchase which would be ineffective against the creditors who would not receive the

statutory notice (Ill. Rev. Stat. 1977, ch. 26, par. 6—104). We therefore find an adequate basis in the pleadings and affidavit to indicate an oral contract was executed. Whether or not this is so can best be determined at an evidentiary hearing.

Accordingly, the order of the circuit court of Tazewell County dismissing the complaint is reversed and the cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

STENGEL and BARRY, JJ., concur.