VIRGINIA BATSON *et al.*, Plaintiffs-Appellants, v. PINCKNEYVILLE ELEMENTARY SCHOOL DISTRICT No. 50, Defendant-Appellee.

Fifth District No. 5—96—0772

Opinion filed February 10, 1998.

John P. Womick, of Womick & Associates, Chartered, of Carbondale, for appellants.

Charles E. Schmidt and Kendall L. Ray, both of Brandon, Schmidt, Goffinet & Solverson, of Carbondale, for appellee.

JUSTICE KUEHN delivered the opinion of the court:

On November 21, 1992, plaintiffs, Virginia Batson and her husband, Bill Batson, attended a craft fair in the Pinckneyville Junior High School gymnasium. The gymnasium is owned and operated by defendant, Pinckneyville Elementary School District No. 50. Virginia and Bill exited the gymnasium through a double door that opened to a sidewalk. The sidewalk contained a single step down near this double door. After stepping through the doorway and onto the sidewalk, Virginia continued moving and fell down near the single step.

On November 19, 1993, Virginia and Bill initiated this action in the Perry County circuit court. Count I of their first amended complaint seeks damages for Virginia, essentially claiming that defendant was negligent in maintaining the step on the sidewalk in a dangerous condition and failing to warn Virginia of that condition. Count II seeks derivative damages for Bill based upon a loss of consortium.

On February 2, 1996, defendant filed its motion for summary judgment grounded on immunity under section 3—106 of the Local Governmental and Governmental Employees Tort Immunity Act (the Act) (Ill. Rev. Stat. 1991, ch. 85, par. 3—106). The circuit court subsequently granted summary judgment in defendant's favor based upon our supreme court's decision in *Bubb v. Springfield School*

*District 186*, 167 Ill. 2d 372, 657 N.E.2d 887 (1995). On February 16, 1996, plaintiffs moved the circuit court to reconsider its summary judgment ruling and requested leave to amend their complaint to allege willful and wanton misconduct on defendant's part. On October 7, 1996, the circuit court denied plaintiffs' motion. Plaintiffs now appeal the circuit court's summary judgment ruling and its denial of leave to amend the complaint.

The dispositive issue in this case is whether a genuine issue of material fact exists, thereby precluding summary judgment. We hold that such an issue of material fact does exist and reverse.

■ Summary judgment "shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005 (West 1994). However, it is a drastic remedy and "must be awarded with caution in order to avoid preempting a litigant's right to trial by jury or his right to fully present the factual basis of a case where a material dispute may exist." (Emphasis omitted.) *Lamkin v. Towner*, 246 Ill. App. 3d 201, 204, 615 N.E.2d 1208, 1210 (1993). "A triable issue of fact exists where there is a dispute as to material facts or where the material facts are undisputed but reasonable persons might draw different inferences from those facts." *In re Estate of Hoover*, 155 Ill. 2d 402, 411, 615 N.E.2d 736, 740 (1993). In determining the appropriateness of summary judgment, the trial court strictly construes all evidence in the record against the movant and liberally in favor of the opponent. *Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871 (1986). On appeal, courts review summary judgment orders *de novo*. *Myers v. Health Specialists, S.C.*, 225 Ill. App. 3d 68, 72, 587 N.E.2d 494, 497 (1992).

⊙2 Section 3—106 of the Act provides:

"Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." Ill. Rev. Stat. 1991, ch. 85, par. 3—106.

The legislative purpose of this section is to encourage the development and maintenance of public parks, playgrounds, and similar recreation areas. *Lewis v. Jasper County Community Unit School District No. 1*, 258 Ill. App. 3d 419, 422, 629 N.E.2d 1227, 1229 (1994).

Furthermore, "[b]y providing immunity, the legislature sought to prevent the diversion of public funds from their intended purpose to the payment of damage claims." *Bubb*, 167 Ill. 2d at 378, 657 N.E.2d at 891.

■ This case turns on whether the sidewalk on which Virginia fell was "public property intended or permitted to be used for recreational purposes" within the import of this statute (Ill. Rev. Stat. 1991, ch. 85, par. 3—106). The immunity provided under section 3—106 does not hinge on the type of activity involved in a particular case. *Ozuk v. River Grove Board of Education*, 281 Ill. App. 3d 239, 243, 666 N.E.2d 687, 690 (1996). Rather, an application of section 3—106 should be based on a case-by-case evaluation of the subject property's character. *Bubb*, 167 Ill. 2d at 384, 657 N.E.2d at 893-94. "In determining the nature of public property, courts have therefore considered whether the property has been used for recreation in the past or whether recreation has been encouraged there." *Bubb*, 167 Ill. 2d at 382, 657 N.E.2d at 893.

■ Defendant's foremost argument for affirmance now rests on our supreme court's recent decision in *Sylvester v. Chicago Park District*, 179 Ill. 2d 500 (1997), an opinion not considered below.[1] Defendant reads *Sylvester* to grant immunity to all walkways providing access to recreational facilities because such paths increase the usefulness of these facilities. We believe that defendant's reading is too broad.

*Sylvester* involved a negligence action seeking damages for injuries sustained when the plaintiff tripped over a concrete parking abutment and fell on the walkway of a park district parking lot serving Soldier Field. The defendant park district filed a motion to dismiss the plaintiff's complaint in the circuit court based upon section 3—106; the motion was subsequently denied. Following a bench trial, the circuit court entered judgment in the plaintiff's favor. On appeal, the First District Appellate Court affirmed. In reversing both the circuit court's denial of the defendant park district's motion to dismiss and the appellate court's affirmance thereof, our supreme court held:

> "Although the walkways and parking lots adjacent to Soldier Field may not be primarily recreational, Soldier Field itself is certainly recreational and these facilities increase its usefulness. Taken as

---

[1]The *Sylvester v. Chicago Park District* opinion was the subject of defendant's motion to cite additional authority filed while this case was under advisement. We granted that motion on December 15, 1997, allowing the parties to file additional briefs addressing the effect, if any, of that decision on this case.

a whole, we find that Soldier Field and its adjacent walkways and parking lots are intended or permitted to be used for recreational purposes.

\* \* \*

\*\*\* In this case, an examination of the property as a whole indicates that the parking lot in which plaintiff fell was an integral part of the Soldier Field recreational facility. We therefore believe that the trial judge erred in narrowly focusing on only whether the parking lot by itself was being used for recreational purposes." *Sylvester*, 179 Ill. 2d at 508-10.

Defendant now urges that this holding supports an affirmance because the sidewalk upon which Virginia fell increased the gymnasium's usefulness and, thus, is subject to section 3—106 immunity. Defendant's contention advocates widespread immunity for all walkways leading to recreational facilities. Such an expansive reading of section 3—106 is unsupported.

We recognize that the *Sylvester* opinion noted that surrounding walkways and parking lots increased the usefulness of the Soldier Field stadium. However, that increased usefulness alone was not outcome determinative, as logic will not allow it. Immunity based solely upon a consideration of the "increased usefulness" factor would be potentially unbounded, causing absurd results. Any walkway, even a considerable distance from recreational property, could increase the usefulness of that property if the walkway is travelled to ultimately enter the area. Any judicial attempt to restrict this potentially unlimited immunity would require arbitrary line-drawing.

Such arbitrary decisions were certainly not the legislature's intention. The plain language of section 3—106 contemplates a determination of immunity for *bounded* public property. For example, it is intended to afford immunity to a playground, including nonrecreational structures within it. *Lewis*, 258 Ill. App. 3d at 423, 629 N.E.2d at 1230. It was not intended to grant immunity *outside* recreational property.

*Sylvester*'s holding confirms that the "increased usefulness" factor is only properly considered after a determination that the nonrecreational structure is *within* the recreational public property covered by section 3—106. The supreme court references a single recreational entity comprised of the Soldier Field stadium and its adjacent walkways and parking lots, namely "the Soldier Field recreational facility." *Sylvester*, 179 Ill. 2d at 509. It clearly considered the site of the plaintiff's fall as "an integral part" of a "whole." *Sylvester*, 179 Ill. 2d at 509. The supreme court further stressed its holding's consistency with other decisions of both the Seventh Circuit and the appel-

late court on similar issues, all of which involved a bar on recovery under section 3—106 because each plaintiff suffered injury *within* a recreational facility. *Diamond v. Springfield Metropolitan Exposition Auditorium Authority*, 44 F.3d 599 (7th Cir. 1995) (plaintiff injured in convention center tunnel); *Annen v. Village of McNabb*, 192 Ill. App. 3d 711, 548 N.E.2d 1383 (1990) (plaintiff injured in park restroom); *Lewis v. Jasper County Community Unit School District No. 1*, 258 Ill. App. 3d 419, 629 N.E.2d 1227 (1994) (plaintiff injured on pumphouse located on school playground); *Conoway v. Hanover Park Park District*, 277 Ill. App. 3d 896, 661 N.E.2d 528 (1996) (plaintiff injured in drainage ditch within park); *Hanover Insurance Co. v. Board of Education*, 240 Ill. App. 3d 173, 608 N.E.2d 183 (1992) (plaintiff injured on cracked concrete in school playground); *Kirnbauer v. Cook County Forest Preserve District*, 215 Ill. App. 3d 1013, 576 N.E.2d 168 (1991) (plaintiff injured by cable barricade in forest preserve). The *Sylvester* holding is not novel; it merely applies section 3—106 in the same manner as the appellate court had previously.

Therefore, it is apparent that section 3—106 may not afford immunity to a nonrecreational structure, even though the structure might be useful to a recreational public property, unless that structure is *within* the recreational property.

█ In the present case, we conclude that the subject portion of the sidewalk is not necessarily recreational public property. At first glance, it seems that the facts before us are akin to those in *Sylvester*, as both involve a walkway leading to a recreational structure. However, a closer examination reveals that our circumstances are much different from those addressed in *Sylvester*. The walkway involved here is part of a school complex, an area scattered with recreational property. Such walkways promote the usefulness of all buildings and areas, both recreational and nonrecreational, within a school complex.

Viewing recreational school areas, together with adjacent sidewalks and parking lots, as comprising a single recreational area would effectively immunize all school property, contrary to the purpose of section 3—106. Although this sidewalk is near the playground and gymnasium, we nonetheless consider it a parcel of property separate from those two entities for purposes of section 3—106. Indeed, an analysis of the independent character of a school sidewalk adjacent to recreational property is still viable, as *Sylvester* did not overrule *Bubb*. Because we consider the subject portion of the sidewalk to be outside both the gymnasium enclosure and the playground area, the determination of the independent character of the sidewalk portion involved will control. Therefore, we must conduct

the required case-by-case analysis. *Bubb*, 167 Ill. 2d at 384, 657 N.E.2d at 893-94.

A sidewalk's purpose is to serve as "a walk for foot passengers" or "a foot pavement." Webster's Third New International Dictionary 2113 (1986). However, public property may have more than one intended use. *Bubb*, 167 Ill. 2d at 383, 657 N.E.2d at 893.

Defendant contends that the sidewalk involved in the present case additionally provides a recreational use for the school's students. In support of this contention, defendant points to our supreme court's decision in *Bubb*, the case that the circuit court found controlling. We disagree with this finding. We perceive that case as factually distinguishable from the instant case and actually supportive of reversal.

In *Bubb*, the supreme court was likewise faced with an action based on injuries sustained from a fall on a school sidewalk. Upon determining that the sidewalk involved was both intended and permitted to be used as recreational property, the supreme court reversed both the circuit court's denial of the defendant school district's motion for summary judgment and the appellate court's affirmance thereof. *Bubb*, 167 Ill. 2d at 384, 657 N.E.2d at 893. However, that case involved an important factor missing here—*a recreational intent*.

Unlike *Bubb*, we have no physical indication from the sidewalk, such as painted markings, from which to glean recreational intent. Such property characteristics indicative of recreational intent are not necessarily required. Still, the record before us contains only affidavits stating that students are *permitted* to recreate on the subject portion of the sidewalk. The record is silent as to recreational *intent*. We recognize that the express language of section 3—106 uses the phrase "intended or permitted." Ill. Rev. Stat. 1991, ch. 85, par. 3—106. Nevertheless, "[i]n construing statutory language, a court will assume that the legislature did not intend to produce an absurd or unjust result." *Cummins v. Country Mutual Insurance Co.*, 178 Ill. 2d 474, 479, 687 N.E.2d 1021, 1024 (1997). We believe that providing blanket immunity to any public property where recreation has ever been permitted is an absurd and unjust result not contemplated by the legislature.

Likewise, the supreme court in *Bubb* noted its own concern over the potentially unjust result of a broad reading of section 3—106:

> "[W]hen construing a legislative act, the court should consider each section in connection with other sections. [Citation.] As noted earlier, the legislature codified the general duty of a local government to use ordinary care to maintain public property in section 3—102 of the Tort Immunity Act. [Citation.] Section 3—106 provides immunity for recreational property. Providing immunity

to any public property where recreation might occur would eviscerate the duty codified in section 3—102. We therefore agree with the appellate court that, at some point, the use of public property for recreation may be so incidental that section 3—106 does not apply." *Bubb*, 167 Ill. 2d at 382, 657 N.E.2d at 893. We cannot overlook this guidance.

Although uncontroverted, defendant's affidavits are an insufficient basis for a finding of immunity on summary judgment. These affidavits indicate nothing more than the school's allowance of students to use the sidewalk for an occasional game of hide and seek or ball-tossing. We cannot unequivocally conclude that such activities constitute regular recreational use of the sidewalk. Rather, we believe that reasonable persons may infer that the permitted recreation was only incidental, thereby rendering section 3—106 inapplicable. Therefore, because the sidewalk's character presents a genuine issue of material fact which may only be properly decided by a jury, the circuit court erred in summarily concluding that the sidewalk's character is recreational.

For these reasons, the judgment of the Perry County circuit court is reversed, and this case is remanded with directions to proceed in accordance with this opinion.

Reversed and remanded with directions.

RARICK and HOPKINS, JJ., concur.